**William Thomas BRYAN, Appellant,**

v.

**Stewart WERNER, Commissioner, Bureau of Corrections, et al., Appellees.**

No. 74–1406.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6), Feb. 25, 1975.

Decided May 7, 1975.

William T. Bryan, pro se.

J. Andrew Smyser, Deputy Atty. Gen., Com. of Pa., Dept. of Justice, Benjamin Lerner and Robert P. Kane, Harrisburg, Pa., for appellees.

Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Appellant William Thomas Bryan brought this pro se civil rights action, pursuant to 42 U.S.C. § 1983, against various prison officials of the State Correctional Institution, Dallas, Pennsylvania (hereinafter referred to as "Dallas"), alleging that several aspects of the operation of the Resident Law Clinic at that institution violated his constitutional rights. After a consolidated hearing, the district court denied appellant's motion for a preliminary and permanent injunction and entered judgment in favor of appellees.[1] We affirm in part and reverse in part, and remand to the district court for further proceedings.

Dallas is a Pennsylvania Correctional Institution of approximately 800 inmates located in Luzerne County, Pennsylvania. Like several other Pennsylvania correctional institutions, it has established a Resident Law Clinic to assist inmates in preparation of many of their legal claims. The clinic maintains a law library and is staffed by four regular and two alternate inmates under the direction of two Correctional Counsellors, who are members of the institution's staff. One of the inmates (Gerald Rohland) serves as resident director of the clinic.

Specific prison regulations govern the activities of the law clinic. These regulations forbid the use of the clinic for "preparation of writs, damage suits, or civil suits against the institution or personnel of the institution"[2] and subject

1. Bryan v. Werner, Civ. No. 73–606 (M.D.Pa. March 12, 1974).

2. A memorandum to "all personnel and resident population" from SCI Dallas' Superintendent,

outgoing clinic mail to the inspection and approval of one of the coordinators.[3] However, inmates are not required to use the clinic services in their legal matters, but are free to operate outside of the clinic, thereby avoiding these restrictions on their types of actions and on their outgoing mail.

## I.

 Appellant raises several contentions on appeal, but we believe that only a few of them have merit. Of principal concern to us are the allegations that various regulations and practices unconstitutionally restrict inmates' access to the courts. The question of such access to the courts has received considerable judicial attention in recent years. *See, e. g.,* Procunier v. Martinez, 416 U.S. 396, 419–22, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); Cochran v. Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453 (1942); Ex Parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970), aff'd sub nom. Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). These cases indicate that, although no particular mode of access to the courts is required, regulations or practices which can be construed as impeding such access are invalid. For example, absent reasonable alternatives, and subject only to reasonable restrictions, inmates must be allowed to assist other prisoners in the preparation of legal petitions. Johnson v. Avery, *supra.* Similarly, the Supreme Court has held that regulations absolutely prohibiting law students and para-professionals from interviewing inmates for

purposes of providing legal assistance are invalid where alternative sources of legal assistance are inadequate. Procunier v. Martinez, *supra,* 416 U.S. at 419–22, 94 S.Ct. 1800. Also, the lack of a law library or of access to such a library might, absent alternatives, unreasonably restrict inmate access to the courts. Younger v. Gilmore, *supra.* See also Wolff v. McDonnell, 418 U.S. 539, 577–80, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). See generally, South Carolina Department of Corrections, The Emerging Rights of the Confined, ch. 2 (1972).

 The district court found that, since appellant was not *required* to use the law clinic and could assert his own and others' claims on his own time, his rights were not abridged by the clinic's operation and regulations. It is unclear, however, whether the clinic with its regulations operate *in fact* in such a way as to impede access to the courts by prisoners at Dallas. For example, if substantially all legal business is conducted through the auspices of the law clinic (because it alone has access to the law library or because it employs all of the inmates with legal expertise) or if, as appellant alleges, the law clinic is the only "real avenue" available to inmates, then some of the restrictions would appear invalid. We therefore believe that remand is appropriate so that the district court can explore the practical consequences of these restrictions and the adequacy of non-clinic assistance.

Of the particular restrictions challenged, one of the most troublesome is the regulation prohibiting the clinic from assisting inmates in suits against the institution or prison officials. Appellees

---

Leonard J. Mack, provides the basis for this restriction. It states the law clinic's purposes as follows:

 (1) To help advise and inform inmates of their legal rights.

 (2) To assist inmates in obtaining these rights as they pertain to their cases.

 (3) To provide legal assistance for improvement in the efficiency and productivity of Post Conviction Petitions. THE LAW CLINIC WILL *NOT* PREPARE WRITS,

DAMAGE SUITS, OR CIVIL SUITS AGAINST THE INSTITUTION OR PERSONNEL OF THE INSTITUTION.

**3.** Section V, ¶ 7 of the Mack Memorandum states in pertinent part:

 *Outgoing mail* of the Law Clinic will be given to one of the coordinators for his approval and signature. The institution will bear the cost of mail that is clearly for the betterment of the Law Clinic . . . .

seek to defend this regulation on the ground that *Johnson v. Avery* permits "reasonable restrictions" on the activities of jailhouse lawyers. However, the Court in *Johnson* referred only to restrictions that are necessary to maintain prison discipline or to prevent abuses and exploitation of other inmates by those claiming to have legal skills. It noted, as examples of permissible regulations, those governing the times and places for the rendering of such services and restrictions on receiving consideration. At no point did it indicate that suits which might prove to be irritations to prison officials could be restricted, and its emphasis on the right to unimpeded access to the courts appears to undercut any claim that such restrictions may be valid.

Thus, the restriction preventing the clinic from assisting inmates in suits against the prison is valid only if there are, in the words of *Johnson* and *Procunier*, "reasonable alternatives" for obtaining assistance in such suits. Unlike the district court, we do not believe that the mere right to file such suits on one's own or to receive assistance from inmates during non-clinic hours is necessarily sufficient. Whether a reasonable alternative exists would depend on whether *in fact* inmates are disadvantaged by being foreclosed from obtaining assistance from the clinic.[4] Since a resident law clinic is the most logical place for an inmate to go with legal problems, and since such a clinic may well employ the inmates with the greatest legal expertise, the district court should closely scrutinize the effect of the regulation prohibiting clinic members from assisting in suits against prison officials. If there is no alternative and readily available means of obtaining assistance of at least equal caliber, the restriction must be invalidated. Not only would such a restriction have the effect of impeding access to the courts in certain types of cases, but it would appear to raise serious equal protection problems by discriminating against certain classes of inmate plaintiffs.

Another point that merits discussion is appellant's contention that inmate legal forms drawn up by him and by other prisoners must conform to institution standards before they are notarized and mailed to the courts. The dispute seems to have arisen over appellant's continued use of the phrase "atty: in propria persona (resident law clinic)," followed by his own signature, instead of "in propria persona (counsel waived)." (N.T. 60, 69, 145–147). In factual finding number 21, the district court found that "[m]embers of the Law Clinic may use any proper form they wish in legal pleadings for themselves or for other inmates in matters not done on Law Clinic time or under the identification of the Clinic." The district court did not resolve the conflict in testimony as to whether some *clinic* mail could not be notarized or mailed because of the form used,[5] apparently because it believed that such a finding would not affect the result. It stated:

> There is no constitutional violation insofar as notary service was refused on documents written by Bryan for other inmates in the name of the Resident Law Clinic. The institutional authorities at Dallas have the right to proscribe the Plaintiff's use of the Resident Law Clinic title in Plaintiff's suits not allowable by the Resident Law Clinic rules.

We believe that this conclusion is partially in error. Prison officials do not have the right to refuse to notarize or mail legal papers when they believe the form used is improper, and we see no basis for making any distinction between

---

4. We note, for example, that it appears from the testimony that inmates in punitive cellblocks have access only to clinic members. (N.T. at 173.) If this is the case, and if the prohibition against filing suits against prison officials is strictly enforced, those inmates may in fact be denied access to the courts in cases very important to them, *i. e.*, in cases challenging their punitive confinement.

5. Compare George Nelson's testimony (N.T. 60, 63) with that of appellant (N.T. 150).

clinic and non-clinic legal papers for these purposes. As the Supreme Court stated over thirty years ago, the question of whether papers are properly drawn is one for the *courts*, not the prison officials, to determine. Ex Parte Hull, *supra*, 312 U.S. at 549, 61 S.Ct. 640. If the directors of the Clinic believe that papers drawn in a certain form might be improper or confusing to the courts, the correct approach would be to *suggest* a change, rather than to require one, or to delete any references to the Law Clinic if for some reason they believe that identification of the clinic in such cases might create problems. Thus, while we agree with the district court that the authorities at Dallas could proscribe the use of the Law Clinic title in suits not allowed under Clinic rules, that does not mean that appellees may refuse to notarize or mail papers relevant to those suits.[6] Such practices, if they in fact occur, impede access to the courts and thus are invalid.

 Appellant raises three other issues with respect to the mail. First, he claims that his access to the courts is impeded by a system which authorizes other inmates to handle and distribute his mail to and from the courts, since that system has resulted in delays. Plaintiff points to two instances where incoming mail reached him about one week after arriving at the prison. In both instances, the delay appears to have been attributable to forgetfulness or sloth on the part of fellow inmates (Rohland and Frisby), and thus the delay itself does not state a cause of action against state officials. Nor do we see anything inherently wrong in a system in which mail within a prison is distributed by inmates, even where there are occasional mix-ups, since much work in a prison is, and must be, performed by inmates as part of their prison jobs. Unless there is evidence of state responsibility for the delays, either direct or indirect (*i. e.*, through a complete inattention to or acquiescence in continued delays), there is no basis for injunctive relief in the federal courts. Since appellant presented evidence below of only two instances where *his* mail was delayed (the delay being due to *other* inmates), we do not see a sufficient state responsibility on this record to warrant federal injunctive relief at this time. *Cf.* Coleman v. Peyton, 362 F.2d 905, 906–07 (4th Cir., 1966). We believe, however, that officials do have a responsibility to promptly forward mail to people like appellant, even where the mail is addressed to them in care of the law clinic and they are no longer working at the clinic.

 Another mail regulation appellant attacks is the regulation prohibiting inmates from writing judges, in the name of the clinic, requesting furlough for fellow inmates. The trial judge found that appellant was removed from the clinic at least in part because he violated this regulation. Appellant contends that some letters of this sort were returned unmailed. Appellees, however, have offered no explanation on appeal as to why this regulation is reasonable or what interest it is intended to serve.[7] If on remand they present convincing evidence and arguments to justify the regulation, the clinic would be free to enforce compliance with it by withholding its official endorsement from such letters or

---

**6.** Also, as we noted earlier, restrictions on clinic assistance for certain types of suits may themselves be invalid.

**7.** At the hearing, counsel for appellees stated that judges who had received such letters had complained about them, and thus the letters diminished judicial respect for the clinic (N.T. 17). He did not, however, state the basis for the complaints or explain why the non-clinic alternatives were preferable. While it appears that letters requesting furlough could be sent through the "treatment staff clinic" rather than the law clinic (N.T. 98, 121), we cannot tell from the record whether the prohibition on sending such letters through the law clinic has the effect of impeding access to the courts. If the "treatment staff clinic" screens out letters which the institution officials believe should not be mailed, or if inmates are otherwise disadvantaged by the inability to obtain law clinic assistance in writing such letters, the prison officials may not prohibit the law clinic from rendering assistance of this type.

even discharging inmates who insist on writing such letters in the name of the clinic. Under no circumstances, however, may the prison officials refuse to mail such letters, regardless of whether the regulation is found to be reasonable. Compliance with a reasonable regulation must be enforced by means other than refusing to mail court-directed letters. Furthermore, a regulation prohibiting clinic members from writing such letters can, like the prohibition in civil rights suits, be upheld as reasonable only if the district court determines that inmates who seek assistance in the writing of such letters have available to them adequate alternative sources of assistance.

The third and last contention raised by appellant regarding the mails is that outgoing clinic mail is censored.[8] The district court, after finding that none of the inmates' *non-clinic* mail was censored, concluded that "[t]here is no constitutional violation in checking Resident Law Clinic mail in order to assure that the Clinic is not to be used for improper purposes."

 We agree with the district court's statement of the law, but not with its apparent view as to what can permissibly be termed "improper purposes" and what steps the institution can take. To the extent that the prohibitions against clinic assistance on letters to judges and on civil rights suits against the prison officials are found on remand to be invalid (on the grounds of inadequate alternative means of assistance), then the "purpose" of such uses of the clinic is obviously proper, and prison officials may not restrict such uses through their power to check clinic mail. Furthermore, in no event can the prison officials refuse to mail letters intended for the courts, as that is the most blatant example of impeded access to the courts. The counsellors supervising the clinic may, however, check outgoing mail to ensure that it in fact is court-related and seeks legal relief.[9] For example, there is some evidence that the officials were concerned about unauthorized solicitation of law books in the name of the clinic (N.T. 114). Letters of this type, not being directed to the courts, may be restricted. Furthermore, the counsellors may examine the outgoing petitions for the purposes of determining whether they are entitled to free postage, for keeping abreast of the legal proceedings in which inmates are involved, or even for making constructive suggestions. However, refusals to mail court-directed mail, and alteration of the substance of court-directed petitions, are wholly impermissible whether or not they are sent through the clinic.

## II.

 The remaining contentions raised by appellant are without merit. First, we see no error in the district court's refusal to consider the merits of his challenge to the adequacy of the law library. At the time of the district court decision, a class action challenging the adequacy of all Pennsylvania prison law libraries was pending in the Eastern District of Pennsylvania. Imprisoned Citizens' Union v. Shapp, Civ. No. 70–3054 (E.D.Pa., filed Nov. 4, 1970). Since plaintiff was a member of that class [10] and thus would be bound by the decision in that case, the district court properly concluded that it would be a waste of judicial effort to decide the same issue being litigated in the *Imprisoned Citizens'* case.

---

8. Appellant points to section V, ¶ 7 of Superintendent Mack's memorandum. *See* note 3, *supra.* See generally Note, 6 Seton Hall L.Rev. 167 (1974), discussing Procunier v. Martinez.

9. They may, for example, refuse to mail threatening letters or any letters discussing escape plans or future criminal activity which an inmate might seek to mail via the clinic.

10. Several of the named plaintiffs in that suit were inmates at Dallas, and plaintiff appears never to have sought to be excluded from the class. Furthermore, as that suit was probably *not* brought under Fed.R.Civ.P. 23(b)(3), then appellant would have had no right to opt out of the class in any event. See 7A Wright & Miller, Federal Practice and Procedure § 1786, at 144.

We also agree with the district court's holding that appellant was not constitutionally entitled to a hearing before being reassigned from the Resident Law Clinic to the Inside Lawn Duty. We do not believe that an inmate's expectation of keeping a particular prison job amounts either to a "property" or "liberty" interest entitled to protection under the due process clause. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Similarly, since his discharge has not resulted in an increased period of confinement or in more restricted confinement, his liberty has not been impaired. Wolff v. McDonnell, *supra.*[11]

### III.

Accordingly, the judgment of the district court will be affirmed in part and reversed in part, and the case will be remanded for the limited purpose of considering the points discussed in part I of this opinion.

---

11. We also summarily reject the following contentions raised by appellant: that the district court improperly limited his examination of witnesses; that it erred in denying his motion for rehearing without providing an evidentiary hearing; that it erred in consolidating the hearing on appellant's motion for preliminary injunction into a trial on the merits; that it erred in refusing to order appellee Tripodi to answer interrogatories after a conclusion of the hearing; and that it erred in denying an evidentiary hearing to consider various other new matters.