**Willie J. O'NEAL, Plaintiff,**

v.

**David C. EVANS, Commissioner, E. B. Caldwell, Deputy Commissioner, State Board of Corrections, Joe S. Hopper, Warden, Lt. L. Thigpen, Officer Boyette, Elton James, Assistant Warden, Defendants.**

**Civ. A. No. 477–95.**

United States District Court,
S. D. Georgia,
Savannah Division.

Sept. 10, 1980.

---

Willie J. O'Neal, pro se.

Arthur K. Bolton, Atty. Gen., John W. Dunsmore, Jr., Asst. Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

BOWEN, District Judge.

Plaintiff filed this action *in forma pauperis* seeking damages and other relief under 42 U.S.C. § 1983 on the 15th day of April, 1977. The complaint alleges a deprivation of the plaintiff's constitutional right to be protected from serious physical injury. The defendants have answered the complaint, denying the allegations contained therein. This case has been assigned to three different district judges and has long been ripe for resolution. On September 4, 1980, the Court conducted a hearing pursuant to 28 U.S.C. § 1915(d). After hearing the evidence and reviewing the plaintiff's allegations, the Court concludes that the case should be dismissed.

For this purpose, certain preliminary findings of fact are recited herein. At the evidentiary hearing, the Court heard virtually all of the testimony that would be adduced at the trial. Only the defendant has made a demand for a jury trial, but because of the law which must inevitably be applied to the facts, which are largely undisputed, there would be no different result after a trial.

Willie J. O'Neal is a 60 year old black man, in fine physical condition for his age, who has spent most of his adult life in prison. Presently, he is serving two life sentences and has been at the Reidsville State Prison in Georgia for over 16 years. Notwithstanding his apparent proclivity toward violent criminal acts, the plaintiff is a most engaging, even entertaining personality. He is intelligent and articulate in an extremely individual way. The plaintiff speaks in a melodiously pleasant southern black brogue. He is a most convincing witness and an able story teller. Plaintiff was well represented in this *pro se* proceeding.

The following account of the events leading to his grievous physical injury is couched in judicial prose which is pale and sterile compared to the plaintiff's rich, colorful patois.

In the spring of 1976, the plaintiff was working in the prison sawmill. There he was "turning logs" and he liked his work. He had no disciplinary record and was well liked by the prison staff and respected by the inmates. At the time, he was a resident of the east wing of the Georgia State Prison under the supervision of defendant Lt. Thigpen. He stayed in cell block C–2. In May of 1976, he was selected by his cell block mates and Lt. Thigpen to become the

chief sanitary orderly or "house man". The plaintiff did not want to be "house man" and preferred to stay in the sawmill. However, he realized the futility of relentless adherence to this preference, and resigned himself to his new duties. The duties of chief sanitary orderly are not without responsibility and perquisites. It is essential that the "house man" be respected and liked by the inmates. He has free access to the prison laundry, the mess hall, and to the prison officer staff.

Plaintiff was also popular among potential prison employers. While the lieutenant wanted him to be "house man", the recreation department wanted him assigned to them to umpire baseball games. He underwent a "runaround" among several prison officials. In a compromise directed by a senior prison official, he was required to work as "house man" in the afternoon, and for the recreation department during the morning.

Although he felt that Lt. Thigpen had done him wrong in the job assignment, plaintiff fulfilled these duties for the entire summer of 1976. He performed his duties willingly and capably, just as he had worked hard for every prison department to which he had been assigned.

In September of 1976, a troublesome white inmate who hated blacks was assigned to cell block C–2. Racial tension is nothing new at Reidsville. At various times, troublesome blacks and whites have caused the intervention of this Court in the racial troubles of the prison.

The plaintiff used his tact and diplomacy in an effort to defuse any controversy with the new white inmate. Most of the cell black inhabitants were black. Plaintiff placed the new white inmate in close proximity to other whites so that "he would be among his white friends" and would not be next to "the colored". The new white inmate, however, was not particularly appreciative of the plaintiff's largess. He was mad about being close to the blacks and equally displeased with being placed among the whites, among whom he said he had no friends.

There was some hearsay, which this Court must consider to be without probative value, to the effect that this white prisoner had threatened to kill a black man when he was removed from disciplinary segregation. On the whole, however, the white inmate could not be considered to be demonstrably more vicious, violent or dangerous than the general prison population at Reidsville, which is a maximum security penitentiary.

On September 7, 1976, plaintiff was returning through the hallways from the mess hall to cell block C–2. He had just eaten in advance of the prison population as the "house men" are permitted to do. As he walked into the doorway of cell block C–2, defendant Correctional Officer Boyette was standing about 15 feet from the doorway. The white inmate aforementioned was standing next to the door. When the plaintiff entered the doorway, he was suddenly, without warning, without provocation and with no chance to defend himself, stabbed in the abdomen by the white troublemaker. While defending himself, plaintiff received two more stab wounds on his arms. Correctional Officer Boyette immediately rushed to his rescue and the inmates were separated. A verbal exchange ensued with the plaintiff telling the white inmate that he would live long enough to kill him.

There is a dispute in the testimony as to the disposition of the weapon and the manner in which the correctional officers followed up the incident, but these are unimportant details. The important facts are that the plaintiff was attacked without warning, stabbed by a white inmate and that the closest correctional officer, defendant Boyette, could do nothing to prevent the stabbing. There is no evidence that Boyette or any other correctional officer knew, or should have known, of the intentions of the attacker. What Boyette did or should have done after the incident does not present a federal or constitutional issue with regard to this plaintiff, and is not determined by this Order.

It is clear from the evidence adduced that the stabbing was racially motivated. It is equally clear from the testimony of all parties that none of the actions of the defendants relating to job assignments or failure to prevent the unexpected assault were racially motivated.

The complaint itself alleges a violation of the constitutional rights of the plaintiff in stating that he was stabbed repeatedly by a group of white racists. Plaintiff did not draw his complaint; it was prepared by another inmate. The evidence adduced at the hearing for the plaintiff is far afield from this allegation of the complaint. The complaint does not deal at all with the plaintiff's job assignment. Even if it did, it would not support a cause of action because it is so clear that the job assignment was based upon the plaintiff's obvious qualifications and his selection for the position of responsibility by his peers. The plaintiff characterized the job as a "house man" as dangerous, but the Court cannot draw the same conclusions from the evidence. The job of "house man" is one of some responsibility, requiring tact and diplomacy, and is made available to those for whom the cell block inhabitants have respect and affinity. It is true that a "house man" without proper qualifications would probably be in mortal danger. But the plaintiff, if anyone, was ideal for the job.

With regard to the stabbing incident itself, the testimony of the plaintiff clarifies his allegations considerably. From this, it is clear that none of the defendants named except Officer Boyette are included in the suit in any but their supervisory capacities; plaintiff alleges no direct participation in or knowledge of the incident in any but this one correctional officer. Respondeat superior is not a theory by which liability may be imposed under 42 U.S.C. § 1983 for a constitutional tort. *Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979). Accordingly, all of the defendants except Boyette would be dismissed if the case were to continue. However, no such individual treatment of the defendants is necessary. The relief granted adequately protects their interests.

As to Officer Boyette, plaintiff's testimony is also clear that the defendant had no foreknowledge of Asher's attack, and that he intervened at the earliest possible moment once he observed the attack in progress. An inmate does, of course, have a right to reasonable protection from the constant threat of violence. *Woodhous v. Virginia*, 487 F.2d 889 (4th Cir. 1973). However, an isolated attack by another inmate does not establish the absence of this protection. *Jones v. Diamond*, 594 F.2d 997, 1016 (5th Cir. 1979); *Woodhous v. Virginia, supra*. Further, even supposing Boyette reacted less promptly and correctly than the plaintiff's own testimony shows him to have, this would state only a case for negligence, which is not a cognizable claim under section 1983. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).

While the complaint alleges Boyette stood by and watched the fight continue, the plaintiff's testimony at the hearing clearly shows the incident was over in such a short time that no direct intervention by Boyette was possible. Plaintiff's contentions of wrongdoing on the part of Boyette center instead on his treatment of the attacker *after* the fight was over. The Court treats this alteration of allegations as an amendment, particularly in view of the plaintiff's admission that he did not draw the complaint himself. Taking the plaintiff's own statements as true that the affray was over quickly, that Boyette reacted promptly, but that he allowed the attacker to retain his knife while being escorted away from the dorm, the Court must conclude that no cause of action even for negligence is stated against Boyette on which plaintiff could recover. That he may have allowed the attacker to retain the knife is only a possible cause of concern to Boyette's employers. No harm from this flowed to the plaintiff. Therefore, the claim as to Boyette must be dismissed as well.

Finally, there is the plaintiff's lengthy complaint about his job assignment. He implies that, were he not assigned as houseman, he would not have been stabbed in the

dorm. This may be true, but the stabbing was not a foreseeable result of his assignment. It was surely beyond the control of all named defendants. That another assignment may have prevented the injury is conjecture aided by hindsight. If there is a link between the plaintiff's job and his injury, it is not actionable. The mere assignment of a prisoner to one job rather than another does not state a constitutional claim absent some other allegation, such as racial discrimination. *Bryan v. Werner*, 516 F.2d 233 (3rd Cir. 1975). There are no such supplemental allegations. Therefore, no claim is stated by the plaintiff regarding his job assignment.

I am happy to observe that the plaintiff's wounds have healed well. He is pleasant enough in court and appears generally truthful. Recent changes in the organization and staffing of the prison will probably prevent arbitrary duty assignments like the one which has so frustrated this plaintiff. Unfortunately, violence in prisons will continue. The ubiquitousness of violence is the point of his case. Plaintiff was the victim of a misanthropic inmate, not of the defendants.

IT IS HEREBY ORDERED AND ADJUDGED that the complaint is DISMISSED. The dismissal is with prejudice.