James G. Ricketts, Ph.D Executive Director Colorado Department of Corrections 6385 North Academy Boulevard Colorado Springs, CO 80907
Dear Dr. Ricketts:
This opinion letter is in response to your October 27, 1980 letter in which you inquired about whether a law library is required in the Colorado prisons if legal service is provided in the form of lawyers and paralegals or another similar service.
QUESTION PRESENTED AND CONCLUSION
Your request for an attorney general's opinion presents one central question:
If the department of corrections obtains the services of either a public or private legal service organization to represent inmates in civil actions will there be a continued need for the department to staff and stock law libraries within Colorado prisons?
 My conclusion is "no." It is my opinion that the constitutional requirement that the Colorado Department of Corrections provide inmates incarcerated in its penal institutions with adequate access to the courts can be either satisfied by the staffing and stocking of adequate law libraries or by providing inmates with access to licensed attorneys who will represent them in their civil actions against the state.
ANALYSIS
The United States Supreme Court has ruled that prisoners have a constitutional right to meaningful access to the courts and that the states have an affirmative obligation to assure such access.Bounds v. Smith, 430 U.S. 817 (1977). The Tenth Circuit Court of Appeals adopted this standard in the case of Ramos v. Lamm, ___ F.2d ___ (No. 79-2324, announced on September 25, 1980), wherein the court affirmed the district court's finding "that the three law libraries at Old Max fall below any known acceptable standard." (Slip opinion at page 63.)
The Supreme Court in Bounds gave the states two alternative ways to provide access to the courts. It said:
 The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.
430 U.S. at 828. As the Tenth Circuit in Ramos v.Lamm, supra, indicated in its slip opinion at page 65,
 The ruling in Bounds does not hold that inmates have an absolute right to any particular type of legal assistance (citation omitted). The states are still free to choose among a variety of methods or combinations thereof in meeting their constitutional obligations.
The Supreme Court and the Tenth Circuit have left the option to the states as to how they wish to provide access.
 Among the alternatives are the training of inmates as paralegal assistants to work under lawyers' supervision, the use of paraprofessionals and law students, either as volunteers or in formal clinical programs, the organization of volunteer attorneys through bar associations or other groups, the hiring of lawyers on a part-time consultant basis, and the use of full-time staff attorneys, working either in new prison legal assistance organizations or as part of public defender or legal services offices. Legal services plans not only result in more efficient and skillful handling of prisoner cases, but also avoid the disciplinary problems associated with writ writers, see Johnson v. Avery, 393 U.S. at 488, 89 S.Ct. at 750; Procunier v. Martinez, 416 U.S. 396, 421-422, 94 S.Ct. 1800, 1815, 40 L.Ed.2d 224 (1974). Independent legal advisers can mediate or resolve administratively many prisoner complaints that would otherwise burden the courts, and can convince inmates that other grievances against the prison or the legal system are ill founded, thereby facilitating rehabilitation by assuring the inmate that he has not been treated unfairly.
Bounds v. Smith, 430 U.S. at 831 (emphasis added). In light of the above authority, it is my opinion that if the state can provide inmates with competent legal representation by a public or private legal service organization, it will meet its constitutional requirement and eliminate the need for law libraries in the prisons. It is also my opinion that such a program would be of an administrative benefit to the prison administration in preserving order and discipline within the department's institutions by discouraging practices which could result in extortion in the collection of fees amongst inmates, and the problems of favoritism, bribery and physical abuse which inmate "jail-house lawyers" often practice on illiterate and ignorant prisoners desiring legal assistance.
If the department does not provide licensed and qualified attorneys to represent inmates at a given institution, a full and adequate law library must be provided for the inmates' use. They must also be given means to utilize that library which involves adequate time to utilize the library and sufficient equipment to make the utilization meaningful, (e.g., tables, chairs, pens, paper, notarial service, stamps etc.). See Bounds v.Smith, supra, 430 U.S. at 824-25.
Whatever program of legal assistance is set up must provide "research assistance to prisoners on an effective scale."See Gaglie v. Ulibarri, 507 F.2d 721, 722
(9th Cir. 1974). Whatever the system envisioned, there must be no attendant regulations which foreclose an inmate's access to the courts. See Bryan v. Werner, 516 F.2d 233
(3rd Cir. 1975).
In my opinion a thoughtfully administered program of legal assistance, whether it be by a public or a private legal service organization, which provides a full coverage of legal problems and which has few restrictions on its use, is a far better vehicle for dealing with inmate legal complaints than any law library, however well stocked. In addition to turning many inmate grievances over to the administrative process, rather than the court process, a system of outside legal assistance could also serve to supply the inmates with the personal attention to problems which they seek in their myriad petitions to the various courts. If such a system were implemented I do not believe that the Department of Corrections would be required to continue the staffing and stocking of its law libraries.
SUMMARY
To briefly summarize my opinion, the State of Colorado and the Department of Corrections has a constitutional duty to provide prisoners with meaningful access to the courts. Such access can be provided by contracting with either a public or a private legal service organization which would provide inmates with assistance of counsel in pressing their civil claims in the courts. If such is done, the State of Colorado and the Department of Corrections need not provide inmates with access to a law library.
Very truly yours,
 J.D. MacFARLANE Attorney General
ATTORNEYS COUNSEL, RIGHT TO INMATES PRISONERS CORRECTIONS LIBRARIES DUE PROCESS
CORRECTIONS, DEPT. OF Administration
The State of Colorado and the Department of Corrections have a constitutional duty to provide prisoners with meaningful access to courts. This can be accomplished through contract with either public or private legal services organizations to provide inmate with legal counsel. If done, the department need not provide inmates with access to a law library.