805 F.2d 1035
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David MAPSON, Plaintiff-Appellant,
v.
Richard P. SEITER, Director, Ohio Dept. of Rehab. &
Corrections, et al., Defendants-Appellees.
 No. 85-3718.
 United States Court of Appeals, Sixth Circuit.
 Oct. 23, 1986.
 ORDER
 
 1
 Mr. David Mapson, the plaintiff in this pro se prisoner's civil rights action, has appealed a summary judgment in which the district court held, among other things, that Mr. Mapson's loss of his "honor placement" status and the attendant loss of his job in an honor dormitory library were not unconstitutional. Mr. Mapson has moved for counsel on appeal. The matter has been referred to a panel of the court pursuant to Rule 9(a) of the court's rules. After examination of the briefs and record, the panel is unanimously of the opinion that oral argument is not needed. Pursuant to Sixth Circuit Rule 9(a) and Rule 34(a) of the Federal Rules of Appellate Procedure, we shall deny the motion for appointment of counsel and affirm the judgment of the district court.
 
 
 2
 On October 1, 1983, Mr. Mapson, a prisoner at the Marion Correctional Institute in Marion, Ohio, filed a verified complaint in a United States District Court in another state. The complaint alleged that Mr. Mapson had engaged in sexual intercourse in the prison visiting room with a lady (presumably not his wife) from the other state's Literacy Council. The alleged recipient of Mr. Mapson's attentions sent a copy of the complaint to the prison authorities and suggested to them that Mr. Mapson's allegation had "caused her family problems."
 
 
 3
 Defendant John Morgan, a prison official, asked Mr. Mapson if the allegation in the verified complaint were true. Mr. Mapson maintained a dignified silence. (In hindsight, the thought may have crossed Mr. Mapson's mind that if he had exercised similar discretion earlier, rather than publicly charging the Literacy Council lady with lack of chastity, it might have been less disruptive of the tranquility of his own life, as well as hers.) Mr. Mapson was then moved from his honor dormitory to a dormitory used as a reception area for new inmates, and shortly thereafter he was summoned to appear before the prison's Institutional Reclassification Committee "for re-evaluation of his honor status." The committee advised Mr. Mapson that it was recommending rescision of his honor status, removal from his position in the honor facility library, and reassignment to the position of hall porter. The committee made a written summary of the conference, and the Managing Officer of the prison approved the recommendation that Mr. Mapson's honor status be rescinded.
 
 
 4
 Mr. Mapson filed an institutional grievance, asking that his honor status and library job assignment be restored. The grievance was denied, and Mr. Mapson appealed to the Chief Inspector. That official decided the appeal adversely to Mr. Mapson, and this suit followed. In addition to complaining of loss of his honor status and library position, Mr. Mapson alleged that certain legal materials had been improperly taken from him when he was moved out of the honor dormitory, and also alleged that prison officials had improperly opened a letter sent him by the court in which his earlier action had been filed.
 
 
 5
 A United States Magistrate recommended that summary judgment be entered in favor of the defendants, and that recommendation was adopted by District Judge John Potter after a thorough review of the record and after the court had made a de novo determination as to those portions of the magistrate's recommendation to which Mr. Mapson took exception.
 
 
 6
 Ohio Administrative Code Sec. 5120-9-52, captioned "Initial Classification of Inmates," provides that prisoners received by the Ohio Department of Rehabilitation and Correction are to be given a "diagnostic work-up" on the basis of which they are to be assigned "a classification status of minimum, medium, or maximum custody." Sec. 5120-9-52(O) provides that "Once classified, the inmate shall not be removed from that classification except pursuant to Rule 5120-9-53...." On the basis of this language the magistrate concluded that "Ohio, by its own action, has created a liberty interest for classified inmates," which "liberty interest" is entitled to protection under the Due Process Clause. The magistrate went on to say, however, and the district judge agreed, that the procedure followed by the state in revoking Mr. Mapson's "honor placement" satisfied the minimum requirements of the Due Process Clause.
 
 
 7
 Our reading of the Ohio Administrative Code differs from the magistrate's; the regulations do not, in our view, give inmates a constitutionally protected interest in continuation of their "honor placement" status, and we therefore find it unnecessary to consider the constitutional adequacy of the procedural mechanism through which Mr. Mapson's honor status was revoked.
 
 
 8
 The question whether Mr. Mapson had a "liberty interest" in his "honor placement" must be determined in the light of Hewitt v. Helms, 459 U.S. 460 (1983). Hewitt teaches that the mere fact that a state has created "a careful procedural structure" to regulate changes in the conditions under which an inmate is held does not itself demonstrate the existence of a protected liberty interest, but that such an interest may be created by the "use of explicitly mandatory language in connection with requiring specific substantive predicates" to such a change. 459 U.S. at 471-72.
 
 
 9
 Ohio Administrative Code Sec. 5120-9-53(C)(3) provides in pertinent part that "No inmate's custody classification, as defined in rule 5120-9-52 of the Administrative Code, shall be permanently changed except ... because of a serious security or custody violation." If the revocation of an inmate's "honor placement" constituted a change in custody classification "as defined in rule 5120-9-52," the requirement that such change be made only on the basis of a "serious security or custody violation" might constitute the kind of "specific substantive predicate" contemplated by Hewitt v. Helms. As it happens, however, rule 5120-9-52 does not refer to honor placement at all; it requires the inmate to be given "a classification status of minimum, medium, or maximum custody," but says nothing about the granting or withholding of honor placement. As far as Rule 5120-9-53(C) is concerned, therefore, revocation of an inmate's honor placement need not be predicated upon a finding that there has been "a serious security or custody violation."
 
 
 10
 Rule 5120-9-53(D) gives the Institutional Classification Committee jurisdiction not only over "reclassification," but also over "honor placement." It seems clear, in context, that "reclassification" would entail a change in the inmate's classification with respect to "minimum, medium, or maximum custody" status, and that such a reclassification is to be distinguished from "honor placement." The regulations set forth no "substantive predicates" whatever for revocation of honor placement, and the only procedural requirements--which are minimal--seem to have been complied with here.
 
 
 11
 Notwithstanding the fact that the regulations themselves create no "liberty interest," the Chief Inspector acknowledged that the Institutional Reclassification Committee was not entitled to act "arbitrarily or capriciously" in revoking Mr. Mapson's honor placement. The Chief Inspector found that the committee had not done so, and we agree. Mr. Mapson's sworn statement, in a public document, as to what happened in the visitor's room, and who it happened with, was either true or false. If it was true, Mr. Mapson's conduct constituted a "Class III offense" under Rule 5120-9-06(F)(7) of the Ohio Administrative Code, dealing with "seductive or obscene acts." If Mr. Mapson's sworn allegation was false, on the other hand, the allegation constituted both perjury and libel. Wrongfully accusing a prison visitor of sexual misconduct, thereby causing her "family problems," would seem no less serious than the "Class III offenses" explicitly proscribed by the regulations. We agree with the Chief Inspector that the committee did not act arbitrarily or capriciously in revoking Mr. Mapson's honor placement.
 
 
 12
 The change in Mr. Mapson's prison job seems to have been part and parcel of the change in his "honor" status, and, in any event, the regulations impose no "specific substantive predicates" for a change in job status. In the absence of regulations imposing such predicates, "an inmate's expectation of keeping a particular prison job amounts [neither] to a 'property' or 'liberty' interest entitled to protection under the due process clause." Bryan v. Werner, 516 F.2d 233, 240 (3d Cir.1975). See also Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir.), cert. denied, 435 U.S. 1009 (1978), holding that a prisoner "was not denied any constitutional right by the action of the prison administrators in removing him, without a hearing, from assignment to [a position as] inmate advisor...."
 
 
 13
 Mr. Mapson's remaining claims were, we believe, dealt with in an appropriate manner by the magistrate and the district court.
 
 
 14
 The questions on which the decision of this cause depends being so unsubstantial as not to need further argument, the judgment of the district court is AFFIRMED under Sixth Circuit Rule 9. The motion for appointment of counsel is DENIED.