**John R. BOYD, P–8554, Plaintiff,**

v.

**George PETSOCK, Superintendent, Defendant.**

**Civ. A. No. 89–1949.**

United States District Court,
W.D. Pennsylvania.

July 6, 1992.

## MEMORANDUM OPINION

LEWIS, District Judge.

By order dated April 7, 1992, the court ordered the parties to file briefs on the constitutional issues presented by John R. Boyd's claim of civil rights violations under 42 U.S.C. § 1983. Having previously filed a joint stipulated list of relevant facts, the parties consented to allow the court to decide the constitutional issues "on the paper." After an independent review of the file and applicable case law, the court con-

---

cludes that the mailing system in place at the State Correctional Institution at Pittsburgh ("SCIP") on July 22, 1987, was constitutionally adequate and provided Boyd with reasonable access to the courts.[1]

The parties agree that SCIP operated the following mail delivery system on or about July 22, 1987, pursuant to Department of Corrections Administrative Directive 803:

   (a) All mail was delivered by the mail room to the appropriate block.

   (b) Legal mail would be bundled separately.

   (c) The mail would be given to the block sergeant who is stationed at the sergeant's desk.

   (d) The block sergeant or designee then opened the mail bag and removed the legal mail which had been previously bundled in the mail room.

   (e) Information regarding legal mail would be posted on a board notifying prisoners who checked the board whether they had received legal mail or not.

   (f) If an inmate received legal mail on a given day, he would have to report to the block sergeant, or other appropriate officer, in order to obtain such mail.

   (g) The mail would then be opened in the inmate's presence, checked for contraband, then given to the inmate. When necessary, inmates would have to show appropriate identification in order to obtain their mail.

   (h) Personal mail was also separated in the mail room and bundled according to the range where an inmate was located. The bundles of personal mail were given to the appropriate range officer to be passed out in the normal course of their duties.

   (i) Records were maintained of receipt of registered or certified mail. If a piece of mail was sent "restricted delivery" the inmate had to sign for the mail personally.[2]

Parties' Statement of Facts, p. 4.

Boyd challenges the constitutionality of the mail delivery system at SCIP under 42 U.S.C. § 1983. In his Brief in Support of Judgment, Boyd asserts that his constitutional rights to due process and access to the courts have been violated because he:

was unable to pursue an appeal which he had filed with the Pennsylvania Superior Court due to Plaintiff not receiving notice of a briefing schedule. The briefing schedule was mailed by the Prothonotary of the Pennsylvania Superior Court in July 1987. Plaintiff never received the briefing schedule, and as a result, his appeal was denied for failure to file a timely brief. The mail system used at SCIP in July of 1987 did not contain any procedure for documenting the receipt of a piece of legal mail by an inmate. Therefore, Plaintiff was unable to prove to the State Court that he never got the briefing schedule. This resulted in the dismissal of Plaintiff's appeal.

Boyd seeks monetary relief from defendant George Petsock, Superintendent at SCIP in July of 1987, in his individual capacity, and injunctive relief from Petsock in his official capacity, as well as costs and attorneys' fees.[3]

Under section 1983, a plaintiff must establish that the defendant committed the

---

**1.** Although neither party has filed a motion for summary judgment, the court believes that it is appropriate for summary judgment standards to apply because the parties have agreed to allow the case to be decided "on the paper," and both had ample opportunity to file materials in support of their respective positions. Summary judgment is proper "if the pleadings ... and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

**2.** In September of 1987, the mail delivery system at SCIP was altered. Since that time, a mail form requiring the prisoner's signature upon receipt of mail has been utilized in conjunction with the procedures outlined above. Parties' Statement of Facts, pp. 4–5.

**3.** Boyd requests an injunction requiring the current superintendent at SCIP to change the legal mail system once again in order to include an additional column on the existing mail form that would require prison officials to identify the senders of all legal mail. Plaintiff's Brief in Support of Judgment, p. 8.

conduct complained of under color of state law and that the conduct deprived the plaintiff of rights secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Sierra v. Lehigh County, Pennsylvania*, 617 F.Supp. 427, 429 (E.D.Pa.1985). Superintendent Petsock, a prison official acting in his official capacity, clearly acted under color of state law when he approved and implemented the mail delivery system at SCIP pursuant to Directive 803. *See Featherman v. DiGiacinto*, 617 F.Supp. 431, 433 (E.D.Pa.1985). Therefore, Boyd will prevail on his section 1983 claim if he is able to establish that Superintendent Petsock deprived him of a constitutional right. *See Parratt*, 451 U.S. at 535, 101 S.Ct. at 1912.

In order to establish a due process claim under section 1983, a plaintiff must establish that the defendant, acting under color of state law, caused him injury by depriving him of a protected life, liberty, or property interest without due process. *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir.1989). In this case, Boyd claims that he was deprived of his right of access to the courts, which falls within the constitutional guarantee of the due process clause of the Fourteenth Amendment. *See Taylor v. Sterrett*, 532 F.2d 462, 471–72 (5th Cir. 1976). In the Third Circuit, a plaintiff claiming denial of access to the courts must prove that his or her claim involves access to the courts and "that some actual injury, that is, an 'instance in which an inmate was actually denied access to the courts' has occurred." *Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir.1982) (*citing Kershner v. Mazurkiewicz*, 670 F.2d 440, 444 (3d Cir. 1982)). Therefore, in order for Boyd to establish his section 1983 due process and access to the courts claims, this court must

find that Boyd's constitutional right of access to the courts was violated by the mail delivery system in place at SCIP in July, 1987.

It is well-established that prisoners do not check their constitutional rights at the prison gate along with their personal belongings. *Wolff v. McDonnell*, 418 U.S. 539, 555–556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974) ("There is no iron curtain drawn between the Constitution and the prisons of this country."). The right of access to the courts is fundamental, if not preeminent, among those rights retained by prisoners. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2974; *Ex Parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941).

While the Supreme Court has not explicitly set forth the requirements for a constitutionally adequate prison mail delivery system, it has instructed generally that access to the courts must be "adequate, effective and meaningful."[4] *Bounds*, 430 U.S. at 822, 97 S.Ct. at 1495. The *Bounds* court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers, providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498. The court declined to establish a bright line test for determining the precise set of circumstances under which a state has fulfilled its duty to provide meaningful access to the courts, however. *Bounds*, 430 U.S. at 830, 97 S.Ct. at 1499.[5]

▮ It is clear in the Third Circuit that prison "officials do have a responsibility to promptly forward mail" to inmates. *Bryan v. Werner*, 516 F.2d 233, 238 (3d

---

4. Boyd asserts that the court delineated four factors to consider when determining the constitutional validity of a prison regulation in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). *Turner* is inapposite to this case, however, because, *Turner* presupposes a constitutional violation and judges the validity of a regulation which has already been found violative of a prisoner's constitutional rights.

5. In *Bounds*, the court stated that "while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here … does not foreclose alternative means to achieve that goal," and that "a legal access program need not include any particular element we have discussed, and we encourage local experimentation." *Bounds*, 430 U.S. at 832, 97 S.Ct. at 1500.

Cir.1975). However, "[t]here is no established minimum requirement that a state must meet in order to provide indigent inmates with adequate access to the courts." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir.1987); *see Peterkin v. Jeffes*, 855 F.2d 1021, 1039 (3d Cir.1988). Prison practices or regulations are valid unless they "can be construed as impeding such access" to the courts. *Bryan*, 516 F.2d at 236. Moreover, prisoners need only be given a reasonably adequate opportunity of access, and not perfect access, to the courts. *Bounds*, 430 U.S. at 825, 97 S.Ct. at 1496; *see Kershner*, 670 F.2d at 445; *Hudson*, 678 F.2d at 466; *see also Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir.1978) (inmate not entitled to unlimited free postage). Rather "[m]eaningful access to the courts is the touchstone," *Bounds* 430 U.S. at 823, 97 S.Ct. at 1495, and "any plan ... must be evaluated as a whole to ascertain its compliance with constitutional standards." *Id.* at 832, 97 S.Ct. at 1500 (*citing Bryan*). Therefore, under *Bounds* and its progeny, the issue in this case is whether other mail delivery procedures were needed at SCIP in July, 1987, in order for Boyd to have been given a reasonably adequate opportunity to present his appeal to the courts.

■ In *Kershner*, for example, two inmates filed a class action complaint under section 1983 seeking injunctive relief against prison officials for their alleged refusal to supply without cost certain legal documents to the plaintiffs. The United States District Court for the Middle District of Pennsylvania denied injunctive relief. *Kershner*, 670 F.2d at 442. The Court of Appeals for the Third Circuit affirmed the district court and held that the plaintiffs' constitutional right of access to the courts had not been abridged because the inmates did not establish any instance in which they were unable to pursue a legal action, and the case involved neither "law libraries" nor "alternative sources of legal knowledge." *Id.* at 442, 444.

Similarly, Boyd has not clearly established any instance in which the mail delivery system at SCIP in July of 1987 denied him meaningful access to the courts. Boyd alleges that his motion to reconsider the dismissal of his appeal to the Pennsylvania Superior Court was denied because he could not prove that he did not receive the briefing schedule from the Prothonotary, but his allegation is merely unsubstantiated opinion which cannot properly be considered by a court deciding a case on summary judgment. Boyd has proffered no affirmative evidence that his motion for reconsideration was denied because he could not prove that he had not received the schedule. He had the burden of doing so. Therefore, pursuant to *Kershner*, Boyd has failed as a matter of law to establish the "actual injury" element of an access to the courts claim under section 1983.

Moreover, neither Directive 803 nor Superintendent Petsock impaired Boyd's right of access to the courts under the Supreme Court's decision in *Hull*. In *Hull*, an inmate petitioned for a writ of habeas corpus because a prison official, acting pursuant to a prison regulation, refused to mail and later confiscated the inmate's first petition for the purpose of ensuring that the petition was properly drawn. The Supreme Court held the prison regulation invalid, reasoning that the propriety of a pleading is for the courts to decide and "the state and its officers may not abridge or impair petitioner's rights to apply to a federal court for a writ of habeas corpus." 312 U.S. at 549, 61 S.Ct. at 642.

Boyd asserts that Superintendent Petsock abridged or impaired his right of access to the courts by failing to adopt a procedure which would have required the invoicing of every piece of legal mail received by every inmate. Boyd also suggests that a prison official may have intentionally destroyed the briefing schedule, citing an alleged incident regarding another inmate's mail as support. *See* Plaintiff's Brief in Support of Judgment, p. 7–8. The alleged incident involving the destruction of another inmate's mail remains unproven and was not included in the joint stipulation of relevant facts upon which the parties agreed to have this case decided. Boyd cannot meet his burden by setting hurdles

higher than the law requires and pleading by innuendo.

More importantly, Boyd has failed to present any evidence tending to show that the briefing schedule ever reached SCIP or that the briefing schedule was ever in Superintendent Petsock's control. The briefing schedule may have been lost en route by the United States Postal Service. Thus, Boyd has also failed to meet his burden regarding whether Directive 803 or Superintendent Petsock abridged or impaired his access to the courts.

Furthermore, when evaluated as a whole, a reasonable factfinder could not construe Directive 803 and Superintendent Petsock's actions and policies as imposing a barrier to Boyd's access to the courts. Boyd asserts no instance in which Directive 803 or Superintendent Petsock prevented his access to communicate with any court save his unsubstantiated allegation that he did not receive his briefing schedule because of SCIP's mail delivery plan. Examples of Boyd's ample access to the state courts include his filing of a P.C.H.A. petition, an appeal, a motion for reconsideration and a petition for allowance of appeal in the Pennsylvania Supreme Court.

Moreover, Boyd had access to a telephone and previous experience with the court regarding filing briefs and appeals. Boyd could have telephoned or written to the court to request information regarding the briefing schedule.

Finally, this court's decision finds additional support in a decision of the District Court for the Eastern District of Pennsylvania upholding the constitutionality of other sections of Directive 803. *Jones v. Wadsworth*, 1988 WL 11532, 188 LEXIS 1721 (E.D.Pa.1988). Therefore, when evaluated as a whole, the court cannot reasonably construe Directive 803 as imposing an unconstitutional barrier to Boyd's access to the courts.

Thus, since Boyd failed as a matter of law to meet the actual injury requirement in an access to the courts claim in the Third

Circuit, and to demonstrate that Directive 803 or Superintendent Petsock impaired his access to the courts, the court holds that the mail system in place at SCIP in July of 1987 provided Boyd with reasonably adequate access to the courts.[6] Therefore, the court declines to order the implementation of any of Boyd's suggested improvements to Directive 803 because it is clear in the Third Circuit that "[w]here there is no constitutional violation ... a federal district court should not question the wisdom of a state's prison policies." *Hudson*, 678 F.2d at 466.

Plaintiff's section 1983 claims for monetary and injunctive relief are insufficient as a matter of law and will be dismissed.

---

**6.** Since the court finds the original mail delivery system in place at SCIP in July of 1987 constitutionally adequate, it follows that the present system, conceded by Boyd to be an improvement over the original, is also constitutional.