Sebastian **INTERSIMONE**, Plaintiff,

v.

Norman **CARLSON** et al., Defendants.

Civ. A. No. 80–410.

United States District Court,
M. D. Pennsylvania.

Dec. 29, 1980.

---

### MEMORANDUM

HERMAN, District Judge.

## I. INTRODUCTION

On April 16, 1980, Sebastian Intersimone, an inmate at the United States Penitentiary, Lewisburg, Pennsylvania, instituted this action, which has been characterized as both a civil rights action and a petition for a writ of habeas corpus, by filing a request for a temporary restraining order. Although this request was denied,[1] Plaintiff filed a complaint on May 9, 1980, alleging deprivations of his First, Fifth, Sixth and Eighth Amendment rights because of interference with his mailing privileges and subsequent disciplinary actions taken against him for his attempts to mail certain letters. Defendants have filed a motion to dismiss or, in the alternative, for summary judgment. Subsequently, Plaintiff filed a cross-motion for summary judgment with respect to his request for injunctive relief and expunge-

---

1. *See* Order, entered June 20, 1980.

ment of the record of certain disciplinary actions. The parties have submitted supporting documents and memoranda and these motions are now ripe for our consideration.

## II. STATEMENT OF FACTS

To fully comprehend this matter, our discussion must begin with Plaintiff's 1977 criminal trial in which he was tried for Possession with Intent to Distribute Heroin and Cocaine. (76 Cr. 224, S.D.N.Y.) During the course of that trial, one of the jurors approached Plaintiff's sister and requested that she tell Intersimone to meet him during the noon recess on the following Monday. This information was reported to District Judge Owen who presided in that case and the juror was dismissed. After informing defense counsel of the reason for the juror's dismissal, Judge Owen requested suggestions for questioning the remaining jurors, and then questioned each of them individually. However, he found no taint among the remaining jurors and the trial was resumed. Following his conviction, Plaintiff filed post-trial motions seeking to re-examine the members of the jury. Judge Owen, however, denied this request and instructed Intersimone that "no interrogation of jurors is to be done without application to me on a reasonable basis." Government Exhibit 2, p. 31.[2]

Thereafter, Plaintiff was held in contempt of court for violation of this court order. As a result, Judge Owen requested prison officials not to forward mail to any members of the jury in Intersimone's criminal trial. Government Exhibit 2.

On May 22, 1979 Plaintiff instituted a civil rights action, which was transferred to the United States District Court for the Southern District of New York and docketed to Civil Action No. 79–4382. In that action, he alleged that his civil rights were violated as a consequence of a conspiracy to tamper with the jury in his criminal trial. Plaintiff named all seventeen jurors in addition to numerous other individuals as Defendants in that action. The court dismissed that action on July 10, 1980. The court concluded in part that all of the jurors had absolute immunity for damages which result from their jury service. Alternatively, the court determined that Plaintiff was collaterally estopped from relitigating the issue of jury tampering. See Intersimone v. Bell, Civil No. 79–4382 (S.D.N.Y. filed July 10, 1980), appeal pending.

The controversy in this matter arose as a result of the conflict between Judge Owen's directive against forwarding any correspondence to any of the jurors in Plaintiff's criminal trial and Rule 5 of the Federal Rules of Civil Procedure which required Plaintiff to serve notice of filing documents upon all defendants including defendant-jurors, in his civil action. In an effort to comply with Judge Owen's request, prison officials placed Plaintiff on "restricted general correspondence." This classification permits "general correspondence which is limited to a list of authorized correspondents ...." Government Exhibit 4, Bureau of Prison Program Statement 5265.5, ¶ 3.[3] Under these guidelines, an inmate may be placed on "restricted general correspondence" on the basis of any of the following determining factors:

1. Involvement in any of the activities listed in § 540.13(e);[4]

2. Attempting regularly to correspond with persons or businesses where the addressee is known by the inmate only through such sources as advertisements in newspapers, magazines, telephone directories, etc.;

3. Being a security risk;

---

2. The Second Circuit Court of Appeals affirmed this conviction without opinion on January 27, 1978. United States v. Intersimone, 573 F.2d 1298 (2d Cir. 1978).

3. Hereafter, the Court will cite these regulations, contained in 28 C.F.R. §§ 540.2, 540.10–22, by reference to their C.F.R. number.

4. Among the activities listed in 28 C.F.R. § 540.13(e) is "[c]lear harassment of a member of the public...."

4. Threatening a government official;

5. Having committed an offense involving the mail;

6. Having participated in major criminal activity of a sophisticated nature; or

7. Notoriety or being highly publicized.

28 C.F.R. § 540.14(a). V. J. Jacobson, unit manager, informed Plaintiff of this determination on October 3, 1979, in accordance with Bureau of Prison guidelines.[5] Government Exhibit 5. In addition, Plaintiff received a list of six individuals with whom he was authorized to have general correspondence.[6] Government Exhibit 6.

Although this restriction was effective in October of 1979, prison officials apparently did not adequately enforce it until March 1980 [7] after further prompting by Judge Owen. Government Exhibit 10, Affidavit of Rocky Dowd. On March 27, 1980, Rocky Dowd, a correctional treatment specialist, supplied Plaintiff with a copy of his authorized list of general correspondents. Nevertheless, on that same day, Plaintiff attempted to mail to defendant-jurors in his civil action notice of the filing of a motion to add additional unnamed defendants. These notices were in envelopes addressed to defendant-jurors and marked "legal mail." The following day, Dowd filed an incident report charging Plaintiff with unauthorized use of the mail and refusing to obey an order by his attempting to mail a letter to defendant-juror, Thelma Davis.[8]

The only enclosure in the envelope was a copy of the motion to add additional unnamed defendants, which Plaintiff was filing in his civil action. At a hearing held on March 31, 1980, the Institution Disciplinary Committee found Plaintiff guilty of these violations and Plaintiff was subjected to various disciplinary actions.

Thereafter, on April 28, 1980, Plaintiff attempted to mail various letters of general correspondence to individuals who were not defendant-jurors nor on his authorized mailing list. As a result, Rocky Dowd filed another incident report against Plaintiff charging him with unauthorized use of the mail and refusing to obey an order. After a hearing, the Institution Disciplinary Committee again found Plaintiff guilty and subjected him to disciplinary action.

In his complaint seeking injunctive, declaratory and monetary relief, Plaintiff alleges the following three counts:

## COUNT I

The filing of the [March] 27, 1980 Incident Report and the subsequent action of the IDC, together with the holding of Plaintiff-Petitioner's legal mailings and threats made in connection with any future such mailings by Plaintiff-Petitioner, constitute cruel and unusual punishment, summary punishment without due process of law in violation of his rights under

---

5. Pursuant to 28 C.F.R. § 540.14(c)(2), when placement on restricted general correspondence is not based on an incident report, the Warden

　(i) Shall advise the inmate in writing of the reasons the inmate is to be placed on restricted general correspondence;

　(ii) Shall give the inmate the opportunity to respond to the classification or change in classification; the inmate has the option to respond orally or to submit written information or both; and

　(iii) Shall notify the inmate of the decision and the reasons, and shall advise the inmate of the Administrative Remedy Procedure (part 542 of this chapter).

6. This restriction on Plaintiff's general correspondence would not apply to "special mail;" which consists of his correspondence with state and federal government officials, the courts, 28 C.F.R. § 540.17, legal correspondence with his

attorney, *Id.* § 540.18, and correspondence with representatives of the news media, *Id.* § 540.19.

7. Although Plaintiff received numerous letters from the Clerk's Office of the United States District Court for the Southern District of New York which informed him that before any documents could be filed, he must submit a proof of service upon all defendants or their attorneys, Plaintiff does not claim that prison officials failed to mail any such notices to named defendants before March 27, 1980. *See* Plaintiff's Affidavit attached to Objections to Magistrate's Report, filed May 30, 1980.

8. Nine additional letters to defendant-jurors were intercepted and are currently in the possession of Larry F. DuPont, a paralegal specialist at the United States Penitentiary. Government Exhibit 1.

the Fifth and Eighth Amendments to the United States Constitution, and furthermore constitute violations of his right to access to the Courts as guaranteed by the First and Sixth Amendments to the United States Constitution.

## COUNT II

The unjustified and unnecessary placement of Plaintiff-Petitioner on "restricted general correspondence" was done without just cause and without hearing, and as such, is in violation of his rights to freedom of speech as guaranteed by the First Amendment to the United States Constitution, in violation of his rights to due process under the Fifth Amendment, and constitutes cruel and unusual punishment in violation of his rights under the Eighth Amendment to the United States Constitution.

## COUNT III

The filing of the April 28, 1980 Incident Report and the actions taken by the IDC thereon are in violation of Plaintiff-Petitioner's rights under the First, Fifth, Sixth, and Eighth Amendments to the United States Constitution.

Although we recognize that constitutional issues should not be decided on an inadequate factual basis, we believe that the constitutional claims involved in this action are clear in light of previous decisions and that the record reveals no genuine issue of material fact. *See* 6 Moore's Federal Practice, ¶ 56.17[10]. Therefore, we will proceed to rule on the parties' motions for summary judgment.[9]

## III. DISCUSSION

### A. First Amendment Claim

In a recent decision, the Court of Appeals for the Third Circuit addressed the conflict between prison regulations and an inmate's free exercise of religion under the First Amendment. *St. Claire v. Cuyler*, Nos. 80–1077, 80–1078 (3d Cir. Nov. 6, 1980). The court recognized several important principles which are involved when prisoners' First Amendment interests are inhibited by prison regulations. In that case, the court asserted:

We begin our analysis by noting the truism that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." However, as we have previously recognized, prisoners' constitutional rights are subject to restrictions and limitations that would be intolerable outside prison walls. "The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." "There must be a 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'"

*Id.*, slip op. at 6 (cases omitted). As the court was required to do in *St. Claire*, this case requires this court to apply these principles of "mutual accommodation".

■ Under the guidelines established by the Supreme Court in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), censorship of prisoner mail is only justified when, first, it "furthers one or more of the substantial governmental interests of security, order, and rehabilitation", and second, the limitation is "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* at 413–14, 94 S.Ct. at 1811. This court, however, must accord wide-ranging deference to prison officials, *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979), and "first amendment values must give way to the reasonable considerations of prison management." *St. Claire, supra*, slip op. at 11.

---

**9.** With respect to Defendants Carlson and Bolger, we note that vicarious liability and respondeat superior have been clearly rejected as a means of imposing liability on an individual in a civil rights actions or Bivens type claims. *Hampton v. Holmesburg Prison Officials*, 546

F.2d 1077, 1082 (3d Cir. 1976); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973). Defendants, however, have failed to raise that issue and we will not raise it sua sponte.

Although a substantial governmental interest dictates against prisoners contact with *jurors* who convicted them, we conclude that the prison's broad limitation on Plaintiff's mailing of general correspondence was unreasonable and infringed upon First Amendment rights.

The preservation of our jury system requires that courts discourage communications with jurors after they have performed their service. *Stein v. New York*, 346 U.S. 156, 178, 73 S.Ct. 1077, 1089, 97 L.Ed. 1522 (1953); *McDonald v. Pless*, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915); *In re Leamer*, 322 F.Supp. 578, 579 (W.D. Pa.1971).[10] In this case, we face not only this broad stricture against communications with jurors, but also a court order against interrogation of these jurors and Plaintiff's conviction for contempt of court as a consequence of violating that court order. Furthermore, the District Judge presiding at the criminal trial made numerous requests that prison officials should not forward mail to the jurors. Certainly these circumstances indicate that prison officials had a legitimate purpose for restricting Plaintiff's general correspondence.

However, to protect this governmental interest, it was only necessary to prohibit Plaintiff from mailing correspondence to members of the jury in his criminal trial.[11] The use of an authorized correspondents list in this instance was an unreasonable, arbitrary and purposeless infringement of the First Amendment.[12] Defendants do not claim that Plaintiff used general correspondence as a means of formulating escape plans or conducting illegal activities. Un-

like *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (prohibiting receipt of books and magazines from person other then publisher) and *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (banning prisoners' labor unions), this action presents no problem concerning prison security or order. Furthermore, no evidence indicates that Plaintiff used general correspondence to harass members of the public except those members of the jury in his criminal trial. Thus, we conclude that a mutual accommodation between the First Amendment and the government's interest in preserving the jury system could have been achieved merely by prohibiting Plaintiff from sending correspondence to jurors in the criminal trial. This use of a negative mailing list was approved in *Guajardo v. Estelle*, 580 F.2d 748, 753 (5th Cir. 1978). At this time, we express no opinion concerning other methods of limiting correspondence, such as requiring the prior consent of an individual with whom the prisoner desires to correspond. *Id.* at 755–56, n. 4.

## B.   Due Process Claim

▮ Plaintiff also contends that his placement on "restricted general correspondence" was without adequate due process safeguards. Although we agree that Plaintiff had a "liberty" interest protected from arbitrary governmental invasion, *see Procunier v. Martinez*, 416 U.S. 396, 417–18, 94 S.Ct. 1800, 1813, 40 L.Ed.2d 224 (1974), we are satisfied that prison officials did provide Plaintiff with notice and an opportunity for a hearing.

10. For the same reason, courts have determined that jurors are entitled to absolute immunity for damages which result from their jury service. *White v. Hegerhorst*, 418 F.2d 894 (9th Cir. 1969), *cert. denied*, 398 U.S. 912, 90 S.Ct. 1710, 26 L.Ed.2d 74 (1970); *McIntosh v. Garofalo*, 367 F.Supp. 501, 504 (W.D.Pa. 1973).

11. In *Finney v. Arkansas Board of Correction*, 505 F.2d 194 (8th Cir. 1974), the court held that a restricted mailing list, which is applied to all prisoners, was unjustified. The court, however, cautioned that "[t]his is not to say that when questions of institutional security are in-

volved, officials may not be justified in limiting correspondence on a particular basis." *Id.* at 211.

12. Although some confusion exists over whether the First Amendment right belongs to the prisoner or the outside correspondent, *See Wolff v. McDonnell*, 418 U.S. 539, 575–76, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974); *Finney v. Arkansas Board of Corrections*, 505 F.2d 194, 211 (8th Cir. 1974); *Guajardo v. Estelle*, 580 F.2d 748, 755–56 n.4 (5th Cir. 1978), our decision does not require a determination of that issue.

While Plaintiff acknowledges that prison officials advised him of the reasons for his placement on restricted general correspondence and of the administrative remedy procedures, he claims that he was not given an opportunity to respond orally or in writing to the change of classification as required by 28 C.F.R. § 540.14(c)(2)(ii). We find this contention inconsistent with Plaintiff's statement that he exhausted all his administrative remedies in challenging his placement on restricted general correspondence. *See* Plaintiff's Affidavit, attached to Cross-Motion for Summary Judgment, filed September 26, 1980. Therefore, we conclude that Defendants fully complied with Fifth Amendment due process requirements in placing Plaintiff on restricted general correspondence.

### C. Access To The Courts

In *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Supreme Court declared that "[i]t is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Id.* at 821, 97 S.Ct. at 1493. Regulations and practices that impede such access are invalid. *See Bryan v. Werner*, 516 F.2d 233, 236 (3d Cir. 1975). In this action, Plaintiff presents this court with a novel issue involving this constitutional right, whether prison officials' refusal to mail legal notices, required by Rule 5 of the Federal Rules of Civil Procedure, to defendants-jurors in civil action 79–4382 constituted a denial of access to the courts.

■ Plaintiff contends that these notices fall within the category of "legal mail", which prison officials cannot alter or refuse to mail. *See Bryan v. Werner*, 516 F.2d at 239. Clearly, these notices directed to defendant-jurors do not constitute "special mail"[13] under Bureau of Prison guidelines. Pursuant to these regulations, prison officials may not inspect outgoing special mail. 28 C.F.R. § 540.17(c). We do not believe that such special treatment should be accorded a letter addressed to a member of the public even though it is marked "legal mail". Otherwise, all prisoners could use this guise to harass members of the public and to transmit information concerning attempted escapes or plans to commit illegal activities.[14] Therefore, prison officials do have a valid reason for opening such mail to insure that its content does not adversely affect prison order or security.

■ With respect to the refusal of Defendants to mail these legal notices, we rule strictly on the facts of this case in reaching our conclusion that Plaintiff was not deprived of his constitutional right of access to the courts. Although Plaintiff was warned on several occasions *prior* to Defendants' enforcement of the restriction that documents in his civil action could not be filed without proof of service on all

---

13. 28 C.F.R. § 540.2(c) provides:

"Special Mail" means correspondence *sent to* the following: President and Vice President of the U.S., the U.S. Department of Justice (including the Bureau of Prisons), U.S. Attorneys Offices, Surgeon General, U.S. Public Health Service, Secretary of the Army, Navy, or Air Force, U.S. Courts including U.S. Probation Officers, Members of the U.S. Congress, Embassies and Consulates, Governors, State Attorneys General, Prosecuting Attorneys, Directors of State Departments of Corrections, State Parole Commissioners, State Legislators, State Courts, State Probation Officers, and other law enforcement officers, attorneys, and representatives of the news media.

"Special Mail" also includes correspondence *received from* the following: President and Vice President of the U.S., Attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts, and State Courts.

14. Under current regulations, prison officials must stamp all special mail with the following statement:

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address.

28 C.F.R. § 540.17(d).

defendants or their attorneys, that case was not dismissed on that ground. Rather, the court made a determination based upon the legal considerations in that action. *See Intersimone v. Bell*, Civil No. 79–4382 (S.D. N.Y. filed July 10, 1980), *appeal pending*. Furthermore, Plaintiff does not claim that his motion to add additional defendants was refused by his failure to serve defendant-juror Thelma Davis. While we alert prison officials that they must act with caution when refusing to mail a notice of the filing of a legal document, it is clear that Defendants' practices and acts in this case did not impede Plaintiff's access to the courts.

### D. Cruel and Unusual Punishment Claim

 "In determining whether conduct or conditions such as those complained of here violate the Eighth Amendment, the basic test is whether the conduct is of such a character as to violate fundamental fairness or as to shock the conscience as measured by evolving standards of contemporary society." *Pifcho v. Brewer*, 77 F.R.D. 356, 358 (M.D.Pa.1977) (Nealon, C. J.), citing *Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). *See Howell v. Cataldi*, 464 F.2d 272 (3d Cir. 1972). On the basis of this test, we find no support for Plaintiff's contention that his placement on restricted general correspondence and subsequent disciplinary actions against him constituted cruel and unusual punishment. Defendants' conduct was neither shocking nor violative of fundamental fairness.

### IV. REMEDIES

Since we have concluded that Defendants' use of "restricted general correspondence" status as applied to the Plaintiff, was an unreasonable and arbitrary infringement of his First Amendment rights we will grant in part this cross-motion for summary judgment with respect to his request for injunctive relief. This will in no way authorize or permit the Plaintiff to correspond with the jurors who tried his criminal case. The issue of damages is not before us at this time.

We will enjoin the Defendants from continuing Plaintiff or placing him in the future on "restricted general correspondence" without just cause and without appropriate due process procedures.