**Harold L. HEARN, Plaintiff,**

v.

**P. J. MORRIS and Donald Butterfield, Defendants.**

**No. Civ. S–79–304 RAR.**

United States District Court, E. D. California.

Nov. 20, 1981.

Harold L. Hearn, pro se.

William George Prahl, Deputy Atty. Gen., Sacramento, Cal., for defendants.

## ORDER

RAMIREZ, District Judge.

Plaintiff, a state prisoner, filed an action pursuant to 42 U.S.C. § 1983, alleging that officials at Folsom State Prison refused, in derogation of his First Amendment rights, to mail his letters addressed to female minors to whom he was not related by blood or marriage. Defendants Morris and Butterfield filed a motion for summary judgment with respect to the allegations of the original complaint.[1] The motion for summary judgment presents the narrow question of whether an institutional rule that forbids prisoners from corresponding with persons under the age of 18 without the prior consent of their parents deprives the prisoners of their constitutional rights. If the rule in question is constitutional, the application of the rule to plaintiff does not violate his civil rights and summary judgment is proper. *See, e. g., Program Engineering, Inc. v. Triangle Publications, Inc.,* 634 F.2d 1188 (9th Cir. 1980).

It should be noted at the outset that the Court is addressing a content-neutral regulation; the regulation must stand or fall without regard to the content of any particular communication.[2]

Defendants assert that they comported themselves in accordance with a valid regulation when refusing to mail plaintiff's letters to female minors.[3] The rule

---

1. In this regard, plaintiff was given leave of Court to file a supplemental complaint naming an additional defendant who allegedly refused to mail similar letters *subsequent* to the filing of the original complaint. The supplemental defendant did not join in the present motion, *see* notes 3 and 4, *infra.*

2. Although the regulation makes no reference to content, defendants submitted two letters to the Court which they contend are obscene, and thus justify summary judgment in their favor. Since both of the proffered letters were intercepted by someone other than the moving defendants subsequent to the filing of the original complaint, they are irrelevant to the instant motion.

Defendant Butterfield enumerates at least eleven instances in which plaintiff's letters to female minors were returned pursuant to the rule in question. Each of these letters was returned for reasons other than its contents, Exhibit H of the motion (exhibit) at 4–5. Moreover, since none of these letters has been preserved by either plaintiff or defendants and since there is no competent evidence of the content of any of them, the Court feels bound to determine the validity of the rule on its face. The propriety of returning plaintiff's correspondence on the ground that it is obscene is simply not before the Court. See text, *infra.*

3. Defendants also contend that they cannot be held personally liable because plaintiff failed to plead their personal involvement in the interception of his mail. While there can be no vicarious liability for violations of 42 U.S.C. § 1983, *see generally, Monell v. Department of Social Services,* 436 U.S. 658, 691–695, 98 S.Ct.

2018, 2036–38, 56 L.Ed.2d 611 (1978), defendants' own exhibits affirmatively establish that they were personally involved in the conduct of which plaintiff complains. Defendant Butterfield admits that his duties include "processing the inmate outgoing mail," and that "processing" includes the reading of outgoing mail, Exhibit H, at 2–3. Defendant Butterfield lists in fact fifteen instances in which either he or his superiors returned plaintiff's outgoing mail, *Id.,* at 4–5. Defendant Morris, on the other hand, is the Warden of Folsom State Prison, and thus either promulgated or acquiesced in the enforcement of Institutional Rule # 3–U, inasmuch as the rule was not one of penal system-wide application, Exhibit C to the [Defendants'] Opposition to Motion for Protective Order. In this regard, *see* 15 Cal.Admin.Code § 3131:

"Each warden and superintendent will prepare and maintain a plan of operations for the sending and receiving of mail for all inmates of the institution. . . . Institution procedures will conform to the policies and regulations stated in this article and will apply to all the inmates of the institution."

Establishment of official policy by way of rule-making alone could subject defendant Morris to liability if the rule is adjudged to be unconstitutional. *See Wanger v. Bonner,* 621 F.2d 675, 679–680 (5th Cir. 1980). Moreover, defendant Morris approved the censorship upon plaintiff's filing of an administrative appeal, Exhibit C, and, as such, his concurrence in the acts of his subordinates with knowledge of the facts constitutes personal involvement. *See, Stringer v. Rowe,* 616 F.2d 993, 1000–1001 (7th Cir. 1980). Accordingly, were the personal in-

relied upon by defendants in refusing to mail plaintiff's correspondence, Institutional Rule # 3–U, provided[4] that:

"[p]ermission from the parents or legal guardian must be obtained prior to correspondence, except immediate family members, with persons under 18 years of age."

The defendants attempt to justify the enforcement of Institutional Rule # 3–U on the bases of the inmate's rehabilitation and protection of the public. In this regard, the Supreme Court recently set forth the following criteria for the institutional imposition of restrictions on the First Amendment rights of a prisoner:

[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822 [94 S.Ct. 2800, 2804, 41 L.Ed.2d 495] (1974).

[C]ensorship of prisoner mail is justified if the following criteria are met. First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression .... [Prison officials] must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad. This does not mean, of course, that prison administrators may be required to show

with certainty that adverse consequences would flow from the failure to censor a particular letter .... But any regulation or practice that restricts inmate correspondence must be generally necessary to protect one or more of the legitimate governmental interests identified above. *Procunier v. Martinez*, 416 U.S. 396, 413–414, 94 S.Ct. 1800, 1811–12, 40 L.Ed.2d 224 (1974).

While "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain internal security," *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1978), the deference to be accorded when the policies and practices in question do not rest on internal security considerations need not be nearly so "wide-ranging." *See, Edwards v. White*, 501 F.Supp. 8, 14 (M.D.Pa.1979), *aff'd without opinion*, 633 F.2d 209 (3rd Cir. 1980); *Beckett v. Powers*, 494 F.Supp. 364, 367–368 (W.D.Wis.1980); *cf. Spain v. Procunier*, 600 F.2d 189, 194 (9th Cir. 1979) ("[m]echanical deference" is not required even when security considerations are invoked if the security measures are attacked on Eighth Amendment grounds).

## REHABILITATION

Defendants assert that Institutional Rule # 3–U is justified under the guise of rehabilitation. Although the California Legislature has disclaimed "rehabilitation" as a goal of the California prison system, Cal. Penal Code § 1170(a)(1),[5] defendants contend that the disclaimer does not signal that decisions regarding an inmate's mail may no longer be based on rehabilitation. Accepting this proposition as true, the Court cannot fathom the manner in which a blan-

volvement of defendants the sole issue presented, the motion for summary judgment would be denied. *See, May v. Enomoto*, 633 F.2d 164, 167, n. 3 (9th Cir. 1980); *Turpin v. Mailet*, 619 F.2d 196, 199–202 (2nd Cir. 1980), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1981).

4. Institutional Rule # 3–U was repealed on May 9, 1979. It was *not*, therefore, the basis upon which the supplemental defendant relied for the interception of plaintiff's mail.

5. The Legislature finds and declares that the purposes [sic] of imprisonment for crime is punishment.

ket prohibition of correspondence with minors outside a prisoner's immediate family advances any rehabilitative goals remaining in the California penal system.

## PROTECTION OF THE PUBLIC

■ Defendants also assert that minors should be protected from "salacious materials," and that the protection of minors from such materials falls within the statutory duty of prison officials pursuant to Cal. Penal Code § 2600.[6] As is more fully discussed in footnote 2, *supra*, this Court must assume that the materials in question are not salacious—were the letters in question "salacious," *i. e.*, "lustful or lecherous," "obscene," "grossly indecent," "lewd," "wanton," "lascivious," "libidinous," or "pornographic," *The Random House College Dictionary*, rev. ed., (1980), *Martinez* would appear to provide clear authority for their interception. Neither inmates nor the public-at-large, for that matter, enjoy the protection of the First Amendment with respect to obscene matter. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

■ While California Penal Code § 2600 undoubtedly vests prison officials with the authority to protect the public from physical assaults fomented or occasioned by inmates, it is less clear that it vests prison officials with the authority to protect the public from the written words of inmates no matter how innocuous. Accordingly, the Court finds that California Penal Code § 2600 does not authorize the blanket prohibition challenged herein. Nevertheless, as will be more fully discussed below, *Martinez* and its progeny do indicate that the rationale of protecting minors from non-salacious materials does support affirmative action on the part of prison officials, albeit of a less intrusive variety than that authorized by Institutional Rule # 3–U.

6. A person sentenced to imprisonment in a state prison may, during any such period of confinement, be deprived of such rights, and only such rights, as is necessary in order to

## PARENTAL RIGHTS

In *Martinez*, the Supreme Court relied upon the First Amendment rights of the willing recipients of mail in establishing standards for censorship. The instant case, however, presents a more complicated calculus of competing constitutional interests, *i. e.*, those of: (1) the inmate in unfettered communication, (2) the prison officials in protecting minors from unwanted mail, (3) the minor in unfettered communication, and (4) the parents in protecting their child from contacts that they deem undesirable.

As a preliminary matter, when inmate mail directed to the general public is at issue, prison officials have little, if any, interest in requiring prior approval from would-be recipients. *See, e. g., Guajardo v. Estelle*, 580 F.2d 748 (5th Cir. 1978); *Finney v. Arkansas Board of Corrections*, 505 F.2d 194 (8th Cir. 1974). As one court wryly observed:

> Officials of the Adult Correctional Institution have ... taken it upon themselves to read and screen outgoing mail to protect the public, including the courts, from insulting vulgar letters. This is not their function—they are not the protectors of the sensibilities of the public which can protect itself.

*Palmigiano v. Travisono*, 317 F.Supp. 776, 788 (D.R.I.1970). Minors, on the other hand, are not deemed in the law capable of protecting themselves. In this regard, three factors have been historically identified as justifying restraints, unconstitutional if applied to adults, on minors—"the peculiar vulnerability of children; their inability to make critical decisions in an informed mature manner; and the importance of the parental role in child-rearing." *Bellotti v. Baird*, 443 U.S. 622, 634, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797 (1979).

■ The mere fact that the would-be correspondent is a prisoner and the would-be recipient is a child does not, however, justify censorship by the state. Absent implica-

provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public.

tion of a legitimate governmental interest, the recipient, *not* the state, is entitled to determine whether a particular communication is "unwanted" by him or her. *Cf. Rowan v. United States Post Office Department*, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) (regulation permitting Postmaster General to intercept correspondence *following* recipient's complaint upheld).

As to the proper party to exercise the recipient's right when the recipient is a minor, the great deference traditionally accorded parents in the upbringing of their offspring requires no extensive discussion. *See, Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed.2d 1070 (1925). While minors do possess fundamental constitutional rights, *see, e. g., Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the extent to which a minor enjoys a First Amendment right to receive correspondence from a prisoner is a matter best addressed within the family unit. *See generally Aladin's Castle, Inc. v. City of Mesquite*, 630 F.2d 1029 (5th Cir. 1980), *probable jurisdiction noted*, 451 U.S. 981, 101 S.Ct. 2312, 68 L.Ed.2d 838 (1981).

The state, on the other hand, has a substantial interest in assuring all its citizens the opportunity to exercise their constitutional rights and as one court noted, "[i]t is illogical to permit the first amendment deprivations of some individuals to be redressed by a rule that unnecessarily invades the privacy of others." *Guajardo v. Estelle*, 580 F.2d 748, 756, n. 4 (5th Cir. 1978). The state has only a limited interest in interfering in the area of childrearing. The state has a compelling interest, however, in preventing its wards from doing that which the state itself cannot do. While parents may find inmate correspondence with their children a wholly unwelcome and offensive interference with the right to raise their children as they see fit, the state cannot be allowed to unnecessarily compromise the inmate's First Amendment rights in the process of assuring parental autonomy.

Given the foregoing principles, the question becomes one of the extent to which prison officials may restrict inmate correspondence with minors to facilitate *parental* censorship of that correspondence. The balance which must be struck between the competing constitutional concerns is a delicate one; any intrusion into the sanctity of the inmate's First Amendment rights must be scrupulously circumscribed so that it is no broader than is minimally necessary to safeguard parental childrearing prerogatives. *See generally Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).

On this basis, the Court concludes that the protection of minors from unwanted correspondence as well as respect for parental autonomy over the affairs of minor children can be accomplished with a lesser intrusion into the realm of the inmate's First Amendment protections than that effectuated by Institutional Rule # 3–U. Prison officials might, consistent with the Constitution, mail a postcard *contemporaneous* with the inmate's letter notifying the child's parents of the salient facts concerning the communication, and that, if objected to, the correspondence can be halted. *Cf. Guajardo v. Estelle*, 580 F.2d at 755, n. 4 (prison officials advised to send postcards to parents *prior* to allowing inmate correspondence, informing parents that correspondence would be forthcoming unless objected to within ten days), *but cf. Finney v. Arkansas Board of Corrections*, 505 F.2d 194, 211 (8th Cir. 1974) (prison officials only authorized to halt inmate mail to minors following receipt of complaint; no provision for notice to parents).[7] *See generally Intersimone v. Carlson*, 512 F.Supp. 526, 531

---

**7.** Although both *Guajardo* and *Finney* address the question presented to this Court, neither provides: (1) an analysis of the governmental interest(s) supporting censorship of mail to minors; (2) an explanation of why prison officials must wait for a complaint before taking any action on inmate/minor correspondence (in the case of *Finney*); or (3) a justification for a prior restraint on prisoner correspondence (in *Guajardo*) based on the *possibility* that the

(M.D.Pa.1980); *Minnesota Civil Liberties Union v. Schoen,* 448 F.Supp. 960, 968 (D.Minn.1978); *Hardwick v. Ault,* 447 F.Supp. 116, 129 (M.D.Ga.1978); *Battle v. Anderson,* 376 F.Supp. 402, 425 (E.D.Okl. 1974); *Preston v. Cowan,* 369 F.Supp. 14, 23 (W.D.Ky.1973), *aff'd on other grounds sub nom., Ault v. Holmes,* 506 F.2d 288 (6th Cir. 1974), 15 Cal.Admin.Code § 3139(b).

In conclusion, Institutional Rule # 3–U requiring prior parental approval sweeps unnecessarily broadly to facilitate parental autonomy in matters of childrearing and is therefore invalid. *Procunier v. Martinez,* 416 U.S. 396, 413–414, 94 S.Ct. 1800, 1811–12, 40 L.Ed.2d 224 (1974). Since the regulation is invalid, defendants are not entitled to summary judgment on the grounds that they comported themselves in accordance with a valid regulation when refusing to mail plaintiff's letters to female minors.[8] Defendants' motion for summary judgment is therefore DENIED.

IT IS SO ORDERED.

correspondence will be unwanted. This Court does not find the state's interest in preserving parental autonomy in childrearing so strong that it justifies prior restraints on prisoner correspondence, *Guajardo,* nor so weak that prison officials cannot do anything to alert parents, *Finney.* The decision in the present case, while a compromise between the positions of the Fifth and Eighth Circuits, adequately considers and protects the rights of all parties involved.

**8.** The present record is inadequate to decide questions concerning the "clearly established" nature of plaintiff's First Amendment rights, *see Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978), and the subjective good faith of defendants, *Johnson v. Duffy,* 588 F.2d 740, 745 (9th Cir. 1978).